# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MAUREEN BAKER** as Personal Representative of the Estate of Barnaby Dupuis Baker, | Case No. 3:24-cv-709-SI |
| Plaintiff, | **OPINION AND ORDER ON MOTIONS IN LIMINE AND OTHER PRETIAL MATTERS** |
| v. | |
| **OREGON HEALTH AND SCIENCE UNIVERSITY** and **RODNEY F. POMMIER, M.D.**, | |
| Defendants. | |

Benjamin T.G. Nivision and C.N. Coby Cohen, ROSSI VUCINOVICH PC, 1000 Second Avenue, Suite 1420, Seattle, Washington, 98104. Of Attorneys for Plaintiff.

Michael J. Wiswall and Taylor B. Lewis, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

The plaintiff in this diversity case is Maureen Baker, the widow of Mr. Barnaby Baker. She also is the personal representative of Mr. Baker's estate. The two defendants are Oregon Health and Science University ("OHSU") and Rodney Pommier, M.D., a surgeon. This is a medical negligence claim brought by the plaintiff on behalf of Mr. Baker's estate. In March 2022, Mr. Baker was diagnosed with an abdominal wall hernia, and he consulted with Dr. Pommier regarding a hernia repair procedure. The hernia repair procedure occurred on

April 27, 2022. During that procedure, Mr. Baker developed a change in cardiac rhythm and died.

The plaintiff alleges that the defendants were negligent in their care of Mr. Baker because they failed to conduct a proper cardiac risk assessment and preoperative clearance for Mr. Baker before performing the hernia repair procedure. The plaintiff seeks noneconomic damages to compensate the beneficiaries of the estate for the loss of society and companionship of Mr. Baker. The defendants deny that they were negligent in their care of Mr. Baker. The defendants assert that additional cardiac assessment was "not indicated" and that additional testing would not have revealed cardiac-related abnormalities or conditions and would not have prevented Mr. Baker's death.

Both OHSU and Dr. Pommier previously provided health care for Mr. Baker. In 2019, Mr. Baker was diagnosed with a small bowel neuroendocrine tumor, a rare type of cancer that develops in the neuroendocrine cells of the small intestine. Mr. Baker sought consultation with Dr. Pommier, a recognized authority in this type of cancer. In January 2020, more than two years before Mr. Baker's 2022 hernia surgery, Mr. Baker underwent an operation at OHSU. Dr. Pommier successfully performed this operation, and Mr. Baker did not have any further evidence of a neuroendocrine tumor. Mr. Baker was appropriately cared for and surveilled for his cancer by Dr. Pommier, who continued to monitor Mr. Baker. The parties, however, dispute the relevance and admissibility of Mr. Baker's 2020 surgery.

In March 2022, Mr. Baker developed left upper quadrant pain and a bulge and was diagnosed with an abdominal wall hernia. On April 4, 2022, Mr. Baker had a telemedicine visit with Dr. Pommier, who recommended that Mr. Baker have his hernia repaired before it caused a bowel obstruction. Dr. Pommier noted that Mr. Baker could have the procedure done in Seattle,

but Mr. Baker wanted Dr. Pommier to perform that surgery. As discussed above, Mr. Baker did not survive his surgery.

The Court has scheduled a nine-day jury trial to begin on January 12, 2026. On January 5, 2026, the Court held a final pretrial conference to discuss the parties' motions in limine, objections to trial exhibits, objections to anticipated witness testimony, and other pretrial matters. The Court now addresses these issues in this Opinion and Order.

## CUMULATIVE TIME LIMITS FOR WITNESS EXAMINATION

The parties have requested, and the Court has set this matter for, a nine-day trial to a jury. The Court expects to be able to seat a jury before the lunch break on the first day of trial. The parties will then deliver opening statements after the Court gives the jury preliminary instructions. Based on the Court's experience, this may leave about two hours at most for witness testimony on the first day of trial. Also based on the Court's experience, about five hours of witness testimony can be received on each full trial day.

The Court believes that this case could be completed within five days. Nevertheless, to ensure that this case will be in the hands of the jury not later than the eighth day of trial, which will allow for deliberations on the ninth day, the Court will limit each side respectively to a total of 16 hours for all direct and cross examinations (including any redirect and recross examinations that may be allowed). During the final pretrial conference held on January 5, 2026, the Court discussed this time limit with the parties, and both sides stated that they do not object. The Court finds that this limit is both reasonable and sufficient for the parties' needs. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("Trial courts have broad authority to impose reasonable time limits. Such limits are useful to prevent undue delay, waste of time, or needless presentation of cumulative evidence. While trial courts have discretion to expedite the completion of trials, they must not adhere so rigidly to time limits as to sacrifice justice in the

name of efficiency." (quotation marks and citations omitted)). Each party's cumulative time limit

does not include jury selection, opening statements, or closing arguments. The Court will

monitor the parties' time "chess clock style," with a party's time beginning when counsel begins

to speak with a witness and ending when counsel concludes that portion of the examination. The

Court may make appropriate adjustments for objections or sidebar conferences. The Court will

inform the parties at least daily of their respective consumed time.

## MOTIONS IN LIMINE

### A.  Standards

A motion in limine is "any motion, whether made before or during trial, to exclude

anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*,

469 U.S. 38, 40 n.2 (1984); *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (stating

that a motion in limine is a "procedural mechanism to limit in advance testimony or evidence in

a particular area"). In addition, although a motion in limine is typically brought to exclude

certain evidence at trial, on occasion a party may file a motion in limine seeking to admit certain

evidence. This is not improper. *See, e.g., Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925,

931 (7th Cir. 1984) (noting in a trademark case the "'commendable procedure' of submitting the

survey questions, along with the results of a preliminary survey, to the district court for a ruling

in limine on the question of admissibility"). As with other motions raised before trial, motions in

limine "are useful tools to resolve issues which would otherwise clutter up the trial." *City of

Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (quotation marks omitted);

*see also Luce*, 469 U.S. at 41 n.4 (explaining that a court may rule in limine "pursuant to the

district court's inherent authority to manage the course of trials").

Importantly, however, "a ruling on a motion in limine is essentially a preliminary opinion

that falls entirely within the discretion of the district court. The district court may change its

ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *Pomona*, 866 F.3d at 1070 (quotation marks omitted). Further, in many instances, rulings "should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (quotation marks omitted). "To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds." *McConnell v. Wal-Mart Stores, Inc*., 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014) (quotation marks omitted). Thus, denial of a motion in limine to exclude certain evidence does not mean that all evidence contemplated by the motion will be admitted, only that the court is unable to make a comprehensive ruling to exclude the evidence in advance of trial. *Id*. at 1168.

## B. Plaintiff's Motions in Limine (ECF 56, ECF 71, ECF 77)

### 1. Cumulative and Duplicative Expert Testimony

RULING: DENIED.

Defendants have identified the following eight doctors whom they expect to call as expert medical witnesses at trial: BobbieJean Sweitzer, M.D.; Xavier Keutgen, M.D.; T. Jared Bunch, M.D.; J. Matthew Aldrich, M.D.; Andrew Baker, M.D.; Hobart Harris, M.D.; Brett Elicker, M.D.; and Ronald Pearl, M.D. ECF 70. Plaintiff objects that testimony from these expert witnesses may be needlessly cumulative or confuse the issues, in violation of Rule 403 of the Federal Rules of Evidence. In response to Plaintiff's motions in limine, Defendants stated that they "do not anticipate needing to call Dr. Pearl." ECF 71 at 3. Although the Court is sensitive to the issues identified by Plaintiff, the matter is best reserved for rulings at trial after timely objection.

### 2. Intraoperative Standard of Care and Performance

RULING: DENIED.

Plaintiff has withdrawn all claims relating to intraoperative surgical technique, anesthesia management during the procedure, and resuscitative efforts. ECF 48. Thus, Plaintiff argues, how the anesthesiologists, surgeons, nurse anesthetists, and members of the resuscitation team performed is irrelevant under the remaining claims, which concern preoperative medical decision-making, not intraoperative conduct. Plaintiff moves to exclude testimony about these subjects under Rules 403 and 702. Defendants respond that evidence as to whether the surgical and anesthesia team provided appropriate care during the hernia repair is relevant because without that testimony, the jury might speculate that a surgical, anesthesia, or resuscitation error caused Mr. Baker's cardiac arrest and death. Although the Court is sensitive to the issues identified by Plaintiff, the matter is best reserved for rulings at trial after timely objection.

### 3. Decedent's Alleged Informed Consent

RULING: DENIED.

Plaintiff has withdrawn all claims based on any alleged failure to obtain informed consent. ECF 48. Thus, Plaintiff argues, what Mr. Baker was told about the potential risks of the procedure would be irrelevant or otherwise inadmissible under Rule 403. Defendants state that they generally agree with Plaintiff's motion and that no witness, including Plaintiff's expert Dr. Nassar, should testify that Defendants did not obtain Mr. Baker's informed consent. Defendants add, however, that Plaintiff's lawsuit concerns allegations that the preoperative evaluations were insufficient and that the informed consent process is part of the preoperative evaluation process. Defendants note, for example, that Mr. Pearson will testify that he obtained Mr. Baker's consent for anesthesia as part of the pre-anesthesia evaluation, during which he reviewed Mr. Baker's cardiac condition. Defendants further argue that hernia repair has associated risks, including unexpected death and that if Defendants' witnesses are not allowed to discuss the risks involved, the jury could be misled into believing that death was not a risk of the

procedure and, accordingly, the outcome must have resulted from negligence. Accordingly, the Court denies this motion.

### 4. Undisclosed Expert Opinions

RULING: GRANTED IN PART AND DENIED IN PART.

The parties agree that a retained expert who provided a written report pursuant to Rule 26(a)(2)(B) may not testify on direct examination about any undisclosed opinions. To that extent, the Court grants Plaintiff's Motion in Limine No. 4.

The parties, however, disagree regarding the scope of permissible expert testimony on direct examination by a treating professional under Rule 26(a)(2)(C). Specifically, Plaintiff argues that treating professionals Dr. Pommier, Dr. Schenning, and Mr. Pearson may testify to what they personally observed or did but may not offer expert opinions on causation, standard of care, cardiac physiology, or any other subject requiring specialized knowledge because they did not provide expert reports under Rule 26(a)(B). In responses, Defendants state that they generally agree with this motion. Defendants add that Dr. Pommier, Dr. Schenning, Mr. Pearson and any other treating provider should be allowed to testify as percipient witnesses about their diagnosis and treatment of Mr. Baker and any opinions formed *during* Mr. Baker's treatment. The Court agrees with Defendants on this point and will not exclude this testimony.

Defendants, however, seek to go further. They add that the treating providers, who did not provide expert reports pursuant to Rule 26(a)(2)(B), should also be allowed to testify about their opinion of the cause of Mr. Baker's death. To the extent that such opinions were informed by the autopsy performed on Mr. Baker, those opinions necessarily would not have been formed during the treatment of Mr. Baker and will likely be excluded, except to the extent that such testimony is necessary to explain any statements made by these treating providers that Plaintiff presents at trial either from them or from any other witness.

**5. Effect of the COVID-19 Pandemic on Standard of Care**

RULING: GRANTED.

Plaintiff argues that Defendants should be precluded from offering any evidence or argument suggesting that the COVID-19 pandemic altered the applicable standard of care, excused departures from required preoperative evaluation, or justified performing a limited or incomplete assessment of Mr. Baker before his elective hernia surgery. Defendants do not object to this motion.

**6. "Unavoidable Complication," "Act of God," and Similar Comments**

RULING: DENIED.

Plaintiff seeks to exclude any testimony, implication, or argument that Mr. Baker's intraoperative death was an "unavoidable complication," an "act of God," "just bad luck," or any comparable phrasing suggesting inevitability. In response, Defendants state that although they do not plan to use terms like "bad luck" or "act of God," the motion is unworkable.

Defendants argue that they should be permitted to offer evidence indicating that Mr. Baker's death was unexpected, occurred despite the care team meeting the standard of care, or was an unavoidable complication. Defendants further contend that they should be allowed to present evidence that additional cardiac workup might not have revealed cardiomegaly and might not have led to Mr. Baker's hernia repair being delayed or cancelled. The Court agrees with Defendants on these points and will not exclude this testimony.

**7. Dr. Schenning's Opinions on Post-Mortem Cardiomegaly**

RULING: GRANTED.

Plaintiff seeks to exclude any testimony from Dr. Katie Schenning suggesting that the cardiomegaly identified at the autopsy of Mr. Baker may have been caused by CPR, rapid fluid administration, inflammation, or any other post-mortem or resuscitation process. According to

Plaintiff, Dr. Schenning testified at deposition that she is not qualified to offer such opinions, does not know whether Mr. Baker had cardiomegaly before his hernia surgery, does not know the normal heart weight range, does not know the degree of enlargement in this case, and not know how CPR or fluids affect cardiac size. Defendants do not object to this motion.

## C.  Defendant's Motions in Limine (ECF 69, ECF 80, ECF 92)

### 1.  Scope of the Pleadings

RULING: GRANTED IN PART AND DENIED IN PART.

Defendants seek to exclude evidence "on any theory, claim, or damages not specifically alleged in Plaintiff's operative Complaint, or on any theory or claim that has been dismissed." ECF 69 at 1-2. In response, Plaintiff explains that she agrees with this general principle. Plaintiff states:

> Plaintiff does not dispute that evidence must be confined to the claims and theories remaining in the case. Plaintiff does not intend to present evidence on dismissed claims (including informed consent) or against dismissed defendants, except where the medical care at issue requires necessary background or context, and only where relevant and not misleading.

ECF 80 at 2. The Court, as well, agrees with this general principle and, to that extent, grants in part Defendants' Motion in Limine No. 1. Plaintiff also states that "Defendants' motion goes further and improperly seeks to preclude any evidence of *direct* negligence by OHSU, arguing that only vicarious liability remains. That contention is incorrect and should be rejected." *Id.* The Court agrees with Plaintiff.

The operative pleading is Plaintiff's First Amended Complaint ("FAC"). ECF 35. In support of their Motion in Limine No. 1, Defendants argue:

> Finally, the Court should not allow any evidence or testimony on any theory or claim of direct negligence against OHSU. Plaintiff's First Amended Complaint *only alleges vicarious liability against OHSU* as the employer of the decedent's medical providers. There

> is no direct claim for issues like inadequate pre-operative medicine
> policies and procedures. Accordingly, evidence on any such theory
> or claim of direct liability should be excluded.

ECF 69 at 2 (emphasis added). Defendants' assertion is not only incorrect; it is baffling. In

Plaintiff's FAC, Plaintiff explicitly alleges two claims. Plaintiff's first claim is labeled, "First

Cause of Action – Medical Negligence/Wrongful Death," and it is asserted against "Defendants,

and each of them." FAC at 7. This unambiguously includes the first named Defendant, OHSU.

Plaintiff's second claim is labeled, "Second Cause of Action – Vicarious Liability/*Respondeat*

*Superior*," and it is asserted only against OHSU. *Id.* at 8.

In Plaintiff's First Claim, alleging "Medical Negligence/Wrongful Death," Plaintiff

expressly alleges:

- Defendants, and each of them, owed decedent Mr. Baker the
  duty to comply with the applicable standard of care in the
  provision of medical care to him. FAC ¶ 46.

- Defendants, and each of them, breached this duty to comply
  with the applicable standard of care, including in the
  perioperative management of Mr. Baker with regard to
  *preoperative cardiac evaluation and clearance* and informed
  consent, among other things. FAC ¶ 47.

- As a proximate result of these breaches of the applicable
  standard of care, and of the failures to obtain proper informed
  consent, Mr. Baker suffered cardiac arrest and died. FAC ¶ 51.

- As a proximate result of his untimely and wrongful death, Mr.
  Baker's statutory beneficiaries have suffered economic and
  noneconomic damages, in amounts to be proven at trial. FAC
  ¶ 52.

- As a proximate result of his untimely and wrongful death, the
  Estate has suffered economic damages in amounts to be proven
  at trial. FAC ¶ 53.

Thus, Plaintiff explicitly stated a claim of direct liability (and not merely vicarious liability)

against OHSU and expressly alleged that OHSU breached the standard of care applicable to that

entity, "including in the perioperative management of Mr. Baker with regard to preoperative cardiac evaluation and clearance[.]" FAC ¶ 47.

In addition, in early 2025, Plaintiff provided Defendants with the formal opinions of Plaintiff's expert witnesses. Among other things, Plaintiff's expert Dr. Aussama Nassar opined that "a more thorough preoperative cardiac evaluation was required by the standard of care in this case"; that "[h]ad that been done, it is more likely than not that significant cardiac dysfunction would have would have been identified" and "would have allowed for improved risk stratification [and] appropriate perioperative monitoring"; and "with reasonable medical certainty, that the failure to conduct a thorough and contemporary cardiac evaluation constituted a deviation from the standard of care under these circumstances, for this patient, at both the surgical team level and the institutional level"; and that "[s]uch an evaluation likely would have prevented or significantly mitigated the risk of intraoperative cardiac complications and death." ECF 54-1 at 4. *See also* ECF 54-2 at 8 (expert opinion of Dr. Kiran K. Khush, noting that "adequate pre-operative evaluation was not performed prior to Mr. Baker's surgery" and "[i]f such testing had been performed, further evaluation and treatment of any identified abnormalities and risk factors likely would have prevent his demise"); ECF 54-3 at 2 (expert opinion of Dr. Matthew Cham, noting that "[o]n a chest radiograph, often called a chest x-ray, an enlarged heart may be readily apparent as the heart would occupy a larger proportion of the thoracic cavity"). Thus, Defendants were on notice from both Plaintiff's FAC and Plaintiff's expert witness opinions that Plaintiff was alleging institutional negligence on the part of OHSU "with regard to preoperative cardiac evaluation and clearance." Moreover, Defendants' own expert witness opinions responded to and disagreed with several of these opinions expressed by Plaintiff's experts. *See* ECF 70 (Defendants' Witness List).

Finally, the Court notes that OHSU does not argue that Plaintiff's theory of direct hospital liability for negligence, or what is sometimes referred to as "institutional liability against a hospital," is substantively invalid under Oregon law. Direct hospital liability in negligence was recognized by the Oregon Court of Appeals in *Jennison v. Providence St. Vincent Med. Ctr.*, 174 Or. App. 219, 224-28 (2001); *see also Piehl v. Dalles General Hospital*, 280 Or. 613, 620-21 (1977) (holding that hospital provides medical care to patients through its employees and that "it owed a duty to plaintiff not to perform these services negligently," and rejecting argument that hospital was "only vicariously liable for the negligence" of its employees or agents). Indeed, other jurisdictions similarly recognize institutional liability for a hospital's negligence. *See, e.g.*, *Cullins v. Ihemaguba*, 2025 WL 2980761, at *1 (N.Y. App. Div. Oct. 23, 2025) (holding that a hospital may be liable when it does not implement appropriate procedures); *Townsend v. Kirakoff*, 545 F. Supp. 465, 467-68 (D. Co. 1982) (stating that a hospital may be liable for negligence when it fails to take some "necessary cautionary measure"); *Wiggins v. United States of America, ex rel. Dept. of Health and Human Servs.*, 2013 WL 12108214, at *3 (E.D. Okla. Nov. 4, 2013) (ruling that "[i]t is also axiomatic that when a hospital provides negligent care, it's rules, policies and staffing procedures may be deficient").[1]

## 2. When Expert Testimony Is Required and Lay Opinions Are Inadmissible

RULING: GRANTED IN PART AND DENIED IN PART.

---

[1] Defendants also invoke Rule 8 of the Federal Rules of Civil Procedure in support of their motion, but the time to raise any issue under Rule 8 has long passed. Plaintiff made the same allegations of direct medical negligence against all defendants in Plaintiff's original Complaint, ECF 1 ¶¶ 42-46. OHSU answered and either stated that the allegations were conclusions of law to which no response was necessary or simply denied the factual allegations. ECF 10 ¶¶ 15-16. Plaintiff made similar allegations in the FAC, ECF 35 ¶¶ 46-52, and OHSU similarly answer. ECF 36 ¶ 15. OHSU also never filed a motion for a more definite statement under Rule 12(e) to clarify whether the reference to "each" defendant in Plaintiff's first claim, alleging direct medical negligence, included OHSU.

Defendants seek to exclude evidence or argument that characterizes the care or treatment provided by Defendants, including whether such care or treatment caused decedent's death, unless presented through the testimony of a qualified expert. In response, Plaintiff states that she agrees with the proposition that medical negligence and medical causation generally require expert testimony under Oregon law, adding that she does not intend to ask lay witnesses to testify about the medical standard of care or to offer medical causation opinions.

Plaintiff notes, however, that several lay witness family members may testify about what they heard a Defendant say about medical negligence and causation issues. To the extent that this testimony is otherwise admissible (including as non-hearsay), it will not be excluded as improper lay opinion.

### 3.  Qualified Expert Testimony Required

RULING: DENIED.

In connection with Defendants' Motion in Limine No. 2, Defendants seek to exclude evidence or argument regarding the applicable standard of care or causation unless from a qualified expert. In response, Plaintiff states that she agrees with and acknowledges the broad principle that expert testimony must come from witnesses with appropriate qualifications, and that experts may not opine outside their field. Plaintiff adds, however, that Defendants seek a blanket pretrial exclusion of entire categories of Plaintiff's expert testimony based on speculative assumptions about scope and qualification. Although the Court is sensitive to the issues identified by both sides, the matter is best reserved for rulings at trial after timely objection.

### 4.  Workup for 2020 Cancer Surgery

RULING: DENIED.

Defendants seek to exclude evidence or argument that a more extensive preoperative cardiac evaluation performed two years earlier for a different, higher-risk surgical procedure

establishes—or is evidence of—the standard of care for a later, less risky procedure, despite both surgeries being performed by the same surgeon in the same jurisdiction. Specifically, Defendants seek to exclude: (1) evidence of the earlier surgery's preoperative testing, consultations, or clearance process; (2) argument that because it was done before, it should have been done again; and (3) expert or lay testimony using the earlier workup as a baseline for the standard of care governing the later surgery. Although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

### 5.  Causation Supported by a Reasonable Medical Probability

RULING: DENIED.

Defendants seek to exclude evidence or argument about causation that is not grounded in the requisite degree of reasonable medical probability. In response, Plaintiff states that she agrees that causation must be proven to a reasonable medical probability through expert testimony. Plaintiff, however, expresses concern that Defendants in this motion may seek to preclude Plaintiff from responding to Defendant's alternative causation theories. Although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

### 6.  Standard of Care Linked to Causation

RULING: DENIED.

Defendants seek to exclude evidence or argument about specific allegations of negligence that are not supported by the requisite causal connection to Mr. Baker's death. In response, Plaintiff states that she agrees that negligence must be causally connected to injury. Plaintiff, however, expresses concern that Defendants in this motion may seek to preclude evidence of negligence before causation is fully developed at trial. Plaintiff adds that standard-of-care evidence is admissible when it forms part of the causal narrative, even if its ultimate significance

is a matter of dispute to be resolved by the jury. Although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

**7. Scientific Basis for Evidence**

RULING: DENIED.

In connection with Defendants' Motion in Limine No. 4, Defendants seek to exclude evidence or argument regarding either the standard of care or causation unless supported by competent expert testimony based on valid scientific evidence. Although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

**8. Emotional Distress**

RULING: RESERVED UNTIL TRIAL.

Defendants seek to exclude evidence or argument about the emotional distress, grief, or mental suffering of Mr. Baker's beneficiaries (namely, his widow and two sons), arguing that such evidence is irrelevant and unfairly prejudicial because emotional distress damages are not recoverable in a wrongful death action under Oregon law. In response, Plaintiff states that she agrees that "emotional distress," as an independent category of damage, is not recoverable in an Oregon wrongful death action. Plaintiff notes, however, that evidence of a beneficiary's relationship with a decedent, including the beneficiary's reaction to the decedent's death, is admissible to establish loss of society and companionship, which are expressly recoverable under ORS 30.020. Plaintiff adds that this inevitably will include expressions of the emotional effect of the loss because emotional connectedness is an inextricable element of both "society" and "companionship." The Court generally agrees with Plaintiff on this latter point, but depending on how a question or answer is phrased, the proffered evidence may be inadmissible either as

irrelevant or under Rule 403. This matter is best reserved for rulings at trial after timely objection.

### 9.   Advance Disclosure of Next Day's Witnesses

RULING: GRANTED.

Defendants ask the Court to require each party to disclose, not later than 5:00 p.m., the names of all witnesses whom that party intends to call the following day. Plaintiff states that she does not object to reasonable advance disclosure of witnesses, provided the requirement applies equally to both sides and allows for good-faith adjustments based on trial developments. The Court agrees.

### 10. No Exclusion of Expert Witnesses

RULING: GRANTED.

Defendants ask the Court to allow all expert witnesses to attend trial or, alternatively, review trial testimony transcripts of other witnesses. Plaintiff opposes Defendants' request. This, however, is the typical practice followed by the Court and is permissible under Rule 615(3). Both sides may have their expert witnesses attend trial or review trial testimony transcripts.

### 11. "Golden Rule," "Reptile Theory," and "Everything Possible" Arguments

RULING: GRANTED IN PART AND DENIED IN PART.

Defendants ask the Court to preclude questions, testimony, or arguments that ask jurors to put themselves in any party's position, *i.e.*, "Golden Rule" arguments. Defendants also ask the Court to preclude questions, testimony, or argument that ask jurors to consider potential harms that could occur "within the community," *i.e.*, "reptile theory" questions, testimony, and argument. In addition, Defendants ask the Court to preclude questions, testimony, or argument that ask jurors to consider "good" or "best" practices or practices designed to "improve" patient safety to the extent that such questions, testimony, or argument do not reflect the applicable

standard of care. Finally, Defendants ask the Court to preclude questions, testimony, or argument that ask jurors to consider whether Defendants did "everything possible" regarding Mr. Baker to the extent that such questions, testimony, or argument do not reflect the applicable standard of care.

Plaintiff responds that she does not intend to make "golden rule" arguments and does not object to a standard prohibition on asking jurors to put themselves in a party's position. Plaintiffs, however, states that Defendants' motion goes far beyond these narrow principles. Plaintiff adds that medical negligence cases necessarily involve discussion of patient safety, risk prevention, and professional responsibility and that asking what reasonably careful physicians should do to protect patients is not improper. Although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

## 12. Hearsay Testimony about Standard of Care and Causation from Lay Witnesses

RULING: DENIED.

Defendants seek to exclude hearsay evidence or argument from lay witnesses about issues relating to the applicable standard of care or causation. In response, Plaintiff states that she agrees that hearsay is inadmissible unless an exception applies. Plaintiff, however, argues that Defendants' motion improperly seeks to exclude all testimony regarding statements made by Defendants' agents, including statements that may qualify as admissions or non-hearsay under Rule 801(d)(2) of the Federal Rules of Evidence. Plaintiff adds that this motion should be limited to excluding inadmissible hearsay, not categorically barring relevant testimony that is otherwise admissible. Although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

## 13. Other Lawsuit or Expert Work

RULING: GRANTED IN PART AND DENIED IN PART.

PAGE 17 – OPINION AND ORDER

Defendants seek to exclude evidence or argument referring to any other lawsuits, legal actions, claims, investigations, or proceedings involving any of the Defendants or any of the Defendants' experts. Defendants also seek to exclude evidence or argument referring to any prior expert work performed by Defendant Dr. Pommier. Plaintiff responds that she does not intend to reference "unrelated lawsuits against Defendants" but that evidence of an expert's professional activities, prior testimony, or litigation work may be admissible for bias, impeachment, or qualification. Plaintiff may not refer to any prior lawsuits, legal actions, claims, investigations, or proceedings against either Defendant, without prior leave of the Court requested outside the presence of the jury. Regarding Plaintiff's ability to cross-examine Defendants' expert witnesses other than Dr. Pommier, although the Court is sensitive to the issues identified by Defendants, the matter is best reserved for rulings at trial after timely objection.

## EXHIBITS

### A. Plaintiff's Trial Exhibits (ECF 55, ECF 61, ECF 81)

Plaintiff has marked for identification 86 trial exhibits, Ex. Nos. 1-86. ECF 55. Defendants object to Plaintiff's Ex. Nos., 12, 13, 15-28, 49, 53, 54, 58, 59, 60, and 65-73. ECF 61. Plaintiff has responded to Defendants' objections. ECF 81.

Without objection, the Court conditionally receives in evidence, subject to an exhibit being used in trial before the close of all evidence, the following: Ex. Nos. 1-11, 14, 29-48, 50-52, 55-57, 61-64, and 74-86. Regarding the exhibits to which Defendants object, the Court rules as follows:

**Ex. 12**    2022 Zoom Call Recording (audio only)

Exhibit 12 is an hour and twenty-minute-long audio recording of a video conference that Mr. Baker's son Karl Baker obtained of several OHSU providers and employees, including Dr. Schenning. At the beginning of the call, an OHSU employee stated that OHSU does not allow

recording of these sorts of communications and that OHSU was not recording the video

conference. Karl Baker, however, did not disclose that he was recording the conference, and

Plaintiff seeks to offer that recording in evidence in this diversity case in which Oregon law

applies.

As explained by the Ninth Circuit, "[i]n diversity cases, a federal court must conform to

state law to the extent mandated by the principles set forth in the seminal case of *Erie R.R. v.*

*Tompkins*, 304 U.S. 64 (1938)[, and] [p]ursuant to *Erie* and its progeny, federal courts sitting in

diversity apply state substantive law and federal procedural law. *Feldman v. Allstate Insurance*

*Co.*, 322 F.3d 660, 666 (9th Cir. 2003). "Most evidentiary rules are procedural in nature, and the

Federal Rules of Evidence ordinarily govern in diversity cases." *Id.* (quotation marks omitted).

"However, the Federal Rules do not supplant all state law evidentiary provisions with federal

ones. . . . Rather, state evidence rules that are intimately bound up with the state's substantive

decision making must be given full effect by federal courts sitting in diversity." *Id.* (quotation

marks omitted). In *Feldman*, the Ninth Circuit held that a California statute prohibiting the use of

unlawfully obtained audio-recordings was a substantive rule that must be followed in a federal

diversity case governed by California law. *Id.* at 667. The same result applies here.

Under Oregon, subject to certain exceptions not relevant here, a person may not obtain

"the whole or any part of a conversation by means of any device, . . . if not all participants in the

conversation are specifically informed that their conversation is being obtained."

ORS 165.540(1)(c). Further, no person may "[u]se or attempt to use, or divulge to others, any

conversation . . . obtained by any means prohibited by this section." ORS 165.540(1)(e). After an

amendment enacted in 2021, "conversation" "includes a communication occurring through a

video conferencing program." ORS 165.535(1). The Ninth Circuit recently rejected a

constitutional challenge to this statute. *See Project Veritas v. Schmidt*, 125 F.4th 929, 937-38 (9th Cir. 2025) (en banc). In addition, another Oregon law provides that "[e]vidence of the contents of any wire or oral communication intercepted [i]n violation of ORS 165.540 shall not be admissible in any court of this state," other than for certain exceptions not relevant here. ORS 41.910(1). Moreover, this prohibition includes even use solely for impeachment purposes. *See State v. Tucker*, 307 Or. 386, 388 (1989). Thus, Exhibit 12 will not be received in evidence. Further, Plaintiff may not state, or in any way imply, to the jury that a recording of that video conference has been made.

That does not mean, however, that a court must tolerate perjury. Plaintiff may ask any witness about the video conference and what was said, assuming that the question and answer would be otherwise admissible. (Here, relevance must be established.) If a witness denies making a specific statement (that is otherwise admissible) during that video conference, the questioner may ask the jury to be excused while the recording of that specific statement is played to the witness for purposes of refreshing memory. Upon the jury's return, the witness may be asked the same question, and for purposes of this trial, the questioner must live with the witness's answer. If, however, the Court believes that perjury has been committed, the Court may refer this issue to the United States Attorney's Office after the trial has ended.

**Ex. 13**        Karl Baker's Handwritten Notes from OHSU Zoom Call

Karl Baker took handwritten notes during his meeting (Zoom call) with several OHSU personnel. Defendants object on both relevance and hearsay grounds. The Court will resolve any relevancy issues at trial as well as whether any statements made by OHSU personnel are statements by an opposing party's agent or employee and, thus, not hearsay, pursuant to Rule 801(d)(2)(D). Regarding the hearsay objection to the notes themselves, they appear to be

out-of-court statements offered for the truth of the matters asserted. Although Plaintiff responds

that these documents are not offered for their truth but only for what was communicated to

Mr. Baker's family, the Court does not understand the relevance of the notes for that purpose

because what a family member may have believed about the 2022 surgery is not relevant.

Whether the notes are admissible as a "recorded recollection" under Rule 803(5) will be

determined at trial and, if so, may be read into evidence but not received as an exhibit, assuming

they are otherwise relevant and admissible. Finally, if a note is offered to rebut a charge of recent

fabrication, that note might be admissible under Rule 801(d)(1)(B) as non-hearsay and may be

read to the jury with a limiting instruction given by the Court, again assuming it is relevant.

**Exs. 15-28**     Mr. Baker's Chart Notes from 2020 Cancer Surgery

The Court overrules Defendants' objection under Rules 401-403.

**Exs. 49, 53, 54, 58, 59, 60, and 65-73**

The Court will rule on any timely objections to these exhibits at trial.

## B.  Defendant's Trial Exhibits (ECF 59, ECF 79, ECF 88, and ECF 91)

Defendants have marked for identification 69 trial exhibits, Ex. Nos. 201-269, not

including illustrative aids or impeachment exhibits. ECF 59; ECF 91. Plaintiff objects to

Defendants' Ex. Nos. 239, 240, 241, 243, 246, 249, 250, 251, and 252. ECF 79. Defendants have

responded to Plaintiff's objections. ECF 88.

Without objection, the Court conditionally receives in evidence, subject to an exhibit

being used in trial before the close of all evidence, the following: Ex. Nos. 201-238, 242, 244-

245, 247-248, 253-269. Regarding the exhibits to which Plaintiff objects, the Court rules as

follows:

**Ex. 239**     Medical Record

Plaintiff objects based on relevance. The Court will rule on any timely objection to this exhibit at trial.

**Ex. 240**         Mental Health Record

Plaintiff objects based on relevance, hearsay, and Oregon's Psychotherapist-Patient Privilege. Under Rule 501 of the Federal Rules of Evidence, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Oregon law recognizes a Psychotherapist-Patient Privilege. *See* ORS 40.230; Oregon Evidence Code ("OEC") 504. Further, this privilege may be claimed by the personal representative of a deceased patient. ORS 40.230(3)(c); OEC 504(3)(c). Defendants, however, argue that there is no privilege under this rule "as to communications relevant to an issue of the mental or emotional condition of the patient . . . [a]fter the patient's death, in any proceeding in which any party relies upon the condition as an *element* of the party's claim or defense." ORS 40.230(4)(b); OEC 504(4)(b)(B) (emphasis added).

The parties agree that under Oregon's wrongful death law, damages may be award to a decedent's estate that "[j]ustly, fairly and reasonably compensates the decedent's spouse [and] children . . . for loss of the society, companionship and services of the decedent." ORS 30.020(2)(d). (The services of the decedent do not appear to be at issue.) Thus, an element of the plaintiff's claim are damages that justly, fairly, and reasonably compensates the decedent's spouse and children for loss of the society and companionship of the decedent. Defendants argue that evidence that shows "issues" with Mr. Baker's wife and sons and evidence of Mr. Baker's struggles with depression, anxiety, and mood are relevant to this "element." Plaintiff disagrees and argues that this evidence is not relevant to the loss of decedent's society and companionship suffered by the decedent's wife and two sons. The Court agrees in part with each side.

Mental health evidence that relates solely to Mr. Baker's depression, anxiety, and mood are irrelevant to his survivors' loss of his society and companionship, or at least the probative value is substantially outweighed to warrant exclusion under Rule 403. If, however, evidence presented by Mr. Baker's widow or sons may fairly be rebutted by evidence of Mr. Baker's mental health "issues" with his widow or sons, and to that extent may be relevant. Further, to assess whether, even if probative, they should be excluded under Rule 403, the Court will need to balance that mental health evidence with the evidence presented at trial by Mr. Baker's widow or sons. Accordingly, Defendant may not present any mental health evidence to the jury until after raising this issue with the Court outside the presence of the jury, pursuant to Rule 104(c)(3) of the Federal Rules of Evidence.

**Ex. 241**     Mental Health Record

Plaintiff objects based on relevance, hearsay, and Oregon's Psychotherapist-Patient Privilege. The Court will follow the procedure and ruling described above regarding Ex. 240.

**Ex. 243**     Medical Record

Plaintiff objects based on relevance and incompleteness. The Court will rule on any timely objections to this exhibit at trial.

**Ex. 246**     Medical Record

Plaintiff objects based on relevance. The Court will rule on any timely objections to this exhibit at trial.

**Ex. 249-252**   Mental Health Records

Plaintiff objects to these exhibits based on relevance, hearsay, and Oregon's Psychotherapist-Patient Privilege. The Court will follow the procedure and ruling described above regarding Ex. 240.

**TRIAL WITNESSES**

**A.  Plaintiff's Trial Witnesses**

Plaintiff has identified the following 14 trial witnesses: Maureen Baker; Nick Baker; Karl Baker; Rodney F. Pommier, M.D.; Katie J. Schenning, M.D.; Glenn I. Pearson, CRNA; Megan H. Phillips, M.D.; Pamela Russell, RN; Denise C. Mathes, RN; Christine R. Ernst, NP; Aussama Nassar, M.D.; Carl W. Wigren, M.D.; Matthew D. Cham, M.D.; and Kiran K. Khush, M.D. ECF 54. Defendants have objected to portions of the testimony of each of Plaintiff's witnesses. ECF 67. Plaintiff has responded to Defendants' objections. ECF 83.

Regarding Defendants' objections to the disclosed testimony of Plaintiff's witnesses, the Court states as follows:

The Court intends to allow appropriate medical testimony about Mr. Baker's 2020 surgery but believes that what his survivors expected for his 2022 surgery based on what happened in his 2020 surgery is largely irrelevant or insufficiently probative. Similarly, arrangements about viewing the body or arranging for an autopsy do not appear to be relevelent or sufficiently probative. Statements made by Mr. Baker before his surgery also do not appear to be relevant. Plaintiff may make an offer of proof at trial, outside the presence of the jury, and ask the Court to reconsider this issue. Statements made by OHSU's agents and employees within the scope of their duties are not hearsay and will be allowed to the extent they are relevant.

Finally, the Court notes that Defendants object to all opinion testimony by Dr. Carl Wigren, M.D., beyond those expressed in his autopsy report. It does not appear that Plaintiff directly responded to this point. Accordingly, to the extent that Plaintiff seeks to elicit from Dr. Wigren any opinions beyond those expressed in his autopsy report, Plaintiff must first obtain leave of Court, requested outside the presence of the jury.

**B.  Defendant's Trial Witnesses**

Defendants have identified the following 16 trial witnesses: Rodney F. Pommier, M.D.;

Katie J. Schenning, M.D.; Glenn I. Pearson, CRNA; Wyatt Rodan, M.D.; Denise Mathes, R.N.;

Avital O'Glasser, M.D.; Julia Margaret Ruark, M.D.; Peter Stenzel, M.D.; BobbieJean Sweitzer,

M.D.; Xavier Keutgen, M.D.; T. Jared Bunch, M.D.; J. Matthew Aldrich, M.D.; Andrew Baker,

M.D.; Hobart Harris, M.D.; Brett Elicker, M.D.; and Ronald Pearl, M.D. ECF 70. As previously

noted, in response to Plaintiff's motions in limine, Defendants stated that they "do not anticipate

needing to call Dr. Pearl." ECF 71 at 3. Plaintiff has objected to portions of the testimony of each

of Defendants' witnesses. ECF 78. Defendants have responded to Plaintiff's objections. ECF 94.

Regarding Plaintiff's objections to the disclosed testimony of Defendants' witnesses, the Court

will address these issues at trial, in the context of specific questions and objections.

## CONCLUSION

The Court rules on Plaintiff's motions in limine (ECF 56), Defendants' motions in limine

(ECF 69), and the parties' objections to each other's trial exhibits and disclosed witness

testimony as stated in this Order.

**IT IS SO ORDERED**.

DATED this 5th day of January, 2026.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
